UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

Matthew Burckner,

      Plaintiff,

v.

Blake Zibell, in his
individual capacity,
and Todd Wagner, in his
individual capacity,

      Defendants.

**Complaint**

**Jury Trial Demanded**

---

For his Complaint, Plaintiff Matthew Burckner ("Burckner") states and alleges upon knowledge, information, and belief as follows:

### Introduction

1. Wisconsin Dells Police Officers Todd Wagner ("Wagner") and Blake Zibell ("Zibell") violated Burckner's Fourth Amendment rights when they unlawfully seized him and used excessive force when they directed the Department's trained law enforcement canine ("K9"), Vader, to bite Burckner.

2. On August 13, 2024, Burckner called 911 seeking emergency help for his wife, who was struggling to breathe.

3. Instead of assisting, both Wagner and Zibell, a Wisconsin Dells PD K9 handler, unlawfully seized Burckner, causing severe injuries requiring surgical intervention and hospitalization.

4.      At the time force was used, Burckner was not suspected of committing any crime, posed no immediate threat to officers or others, and was not actively fleeing.

5.      Zibell later bragged about mauling Burckner with Vader, saying the pair "lost our virginity."

6.      Prior to violating Burckner's rights, Wagner had a long history of disciplinary actions taken against him, including resigning in lieu of termination from a nearby law enforcement department for years of misconduct.

7.      Burckner now brings this action pursuant to 42 USC §§ 1983 and 1988, seeking compensatory, special, and punitive damages in addition to costs, attorneys' fees, and all other recoverable damages.

**Parties**

8.      Burckner resides in and is a citizen of North Dakota. At all relevant times, he was 6'1" tall and weighed on 136 pounds.

9.      Defendant Zibell was employed and acting within the scope of his duties as a Wisconsin Dells Police Officer and K9 Handler in Wisconsin Dells, Wisconsin, at all relevant times; therefore, he was acting under color of state law.

10.      Defendant Wagner was employed and acting within the scope of his duties as a Wisconsin Dells Police Officer in Wisconsin Dells, Wisconsin, at all relevant times; therefore, he was acting under color of state law.

11.      Officers Zibell and Wagner are each sued in their individual capacity.

**Jurisdiction and Venue**

12.      Plaintiff brings this action pursuant to 42 U.S.C. §§ 1983 and 1988.

2

13. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

14. Venue is proper in this Court under 28 U.S.C. § 1391(b) because all incidents, events, and occurrences giving rise to this action occurred in the Western District of Wisconsin.

**Facts**

15. On August 13, 2024, Burckner, his wife and two children were traveling through Wisconsin and stayed at the AmericInn in the Wisconsin Dells.

16. At approximately 7 p.m., Burckner's wife began experiencing a medical emergency and was struggling to breathe.

17. Matthew called 911 to request emergency medical assistance. Due to problems with the area's 911 system, he was repeatedly disconnected.

18. Frustrated and in fear for his wife's life, Burckner repeatedly told 911 dispatchers that he needed help immediately.

19. A dispatcher requested that police respond to the scene because Burckner "was very disgruntled, didn't want to give much information and was being very rude. I'm really unsure of what's happening there."

20. Wagner radioed "10-4". Zibell radioed that he was "on-route."

21. The dispatcher speculated over the radio that the caller "did sound 10-56" – meaning that he was potentially intoxicated.

22. However, the officers were not informed of any crime, threat, or violent conduct.

23.     After dispatchers told Burckner that an ambulance was on its way, he went to the parking lot to direct paramedics to his room as depicted in the below photograph.



24.     Instead of going to Burckner, the ambulance parked in the lobby driveway. The emergency medical responders then went inside the lobby.

25.     Not finding Burckner inside the lobby, an emergency medical responders radioed to dispatch: "Staff on scene is reporting they haven't seen anybody. Do we have a description of who we're looking for?"

26.     Dispatch responded: "Be advised that they will be coming from room 307."

27.     The medical responder radioed to dispatch, "We'll go ahead and wait here in the lobby and see if they show."

28.     Officers Zibell and Wagner thus knew that Burckner would be coming

4

toward the lobby as he sought emergency medical help for his wife.

29.     As Zibell drove toward the AmericInn, he observed Burckner coming toward the ambulance.

30.     Burckner found the ambulance empty, slapped his hands on the door and walked toward the lobby.

31.     Burckner walked inside the lobby, found the emergency personnel and directed them to follow him back toward his room.

32.     Zibell pulled into the AmericInn driveway first and saw Burckner exit the lobby. Zibell knew someone had called 911 for paramedics, but rather than assist Burckner, Zibell immediately escalated the situation, yelling at Burckner: "Hey! Get over here! What's going on! Get over here!"

33.     Wagner pulled up next and yelled, "get back here now!"

34.     Zibell told Burckner, "You're gonna get bit by the dog."

35.     Burckner was attempting to obtain emergency medical help for his wife and posed no immediate threat to officers or others.

36.     Burkner continued walking away from the officers, attempting to lead paramedics to his wife.

37.     Zibell ran back to his patrol car where he retrieved his K9, Vader, as Wagner ran toward Burckner.

38.     Both Zibell and Wagner falsely wrote in their reports that Burckner ran away from the officers. Objective surveillance video evidence contradicts that

5

assertion, showing him walking at all times, not running, as he attempted to lead the paramedics to his wife.

39.    Surveillance video shows Burckner walking toward his room when Wagner seized Burckner by the shirt and told him he was under arrest.

40.    At no point did Defendants have reasonable suspicion that Plaintiff had committed, was committing, or was about to commit a crime, nor probable cause to arrest him.

41.    Burckner responded: "For what? My wife needs help!"

42.    Burckner's response eliminated all doubt from the officers on whether Burckner was the individual who called 911 and was seeking assistance.

43.    Surveillance video shows Burckner not resisting and cooperating to walk back with Wagner toward the lobby area. Burckner again told Wagner that he was trying to help his wife.

44.    Wagner then shoved Burckner to the ground despite his lack of resistance or effort to flee. As Burckner was laying on his stomach, Zibell ran with Vader to Burckner.

45.    Wagner's use of force on Burckner violated his right to be free from unreasonable seizure as Burckner had committed no offense, was not attempting to evade arrest by flight, and was no threat to the officer or others when Wagner pushed him to the ground.

46.    Zibell then arrived with Vader and Vader viscously mauled Burckner as Burckner laid on the ground, inflicting multiple deep tissue wounds and causing

6

permanent damage.

47.    Burckner shouted, "Get the dog off me! I'm not trying to hurt you! I need help!"

48.    One of the officers responded: "I'm trying."

49.    As Vader continued to bite into Burckner, he yelled: "My wife needs help!"

50.    Zibell's use of Vader on Burckner violated Burckner's right to be free from excessive force and unreasonable seizure and violated national policing standards and training guidelines.

51.    Consistent with constitutional guidelines and national policing standards, the Wisconsin Dells Police Department's Use of Force Policy states that an officer shall only use the minimum amount of force that is reasonably necessary to perform his/her duties, and is to be determined in part by the nature of the incident offense and surrounding circumstances.

52.    Burckner was not suspected of any crime before he was mauled by Vader.

53.    Burckner was not attempting to flee or evade arrest by flight when he was mauled by Vader.

54.    Burckner did not pose a risk of harm to the officers or others when he was mauled by Vader.

55.    Burckner was alone, unarmed, of very slight build, on the ground, and

in the presence of two fully armed officers when he was mauled by Vader.

56.     Based on these factors, force should never have been used on Burckner.

57.     Moreover, general law enforcement practice prohibits the release of a K9 on Burckner in these circumstances.

58.     Burckner was taken to St. Clare Hospital in Baraboo, where he was diagnosed with multiple puncture wounds to his left shin, right neck, right shoulder and arm as well as a large laceration to the right anterior lateral chest/axilla.

59.     His wounds are depicted in the below photographs:







60. Due to the severity of his wounds, Burckner was airlifted to St. Mary's Hospital in Madison for emergency evaluation and care and placed in the intensive care unit. He received sutures to close wounds on his bicep and back. He subsequently underwent surgery to explore, wash out, and close a 15 cm laceration to his right axilla (armpit).

61. He has incurred over $50,000 in medical bills for his treatment.

62. After clearing the scene, Zibell loaded Vader back into his squad car in the AmericInn parking lot. He then began driving and made a call to an unknown recipient.

63. He stated to the recipient: "We lost our virginity. I said we lost our virginity. We fucking finally did it. So, pretty good."

64. Zibell then stated: "I was a little worried that (Vader) might let go, and it was a light bite."

65. Burckner was not charged with any crimes.

66. Burckner continues to suffer from severe pain, numbness and impairment as a result of the attack.

67. Zibell had previously been admonished for inappropriate use of force during an incident on April 10, 2023, when he slammed a handcuffed suspect face-first into the side of a squad car door. An internal investigation found that use of force, "was not reasonable given the known facts and circumstances."

68.     Prior to his employment at the Wisconsin Dells Police Department, Wagner was employed at the Columbia County Sheriff's Office beginning in approximately 2000. He was disciplined, found responsible for misconduct or given substandard evaluations at least 30 times, including for having an excessive temper, harassment, insubordination, conduct unbecoming an officer, and giving conflicting or unlawful orders.

69.     In February 2021, the Columbia County Sheriff terminated Wagner due to his misconduct. Wagner was then allowed to resign in lieu of termination.

70.     Officers Wagner and Zibell, while acting under color of law, unlawfully seized Burckner and used unreasonable and excessive force against him in violation of his Fourth Amendment rights to be free from unreasonable searches and seizures.

71.     Officers Wagner and Zibell acted unreasonably under the circumstances when they had no reasonable suspicion of criminal activity and no justifiable fear for their own or others' safety.

72.     Officers Wagner and Zibell both had reasonable opportunities to intervene and stop the unreasonable use of force by the other officer, but neither made any effort to do so, thereby violating Plaintiff's Fourth Amendment Rights.

73.     As a direct and proximate result of Officers Wagner's and Zibell's acts and omissions, Burckner suffered and will continue to suffer severe pain and suffering, emotional distress, disfigurement, and permanent injuries, including significant psychological trauma caused by the K9 attack.  Burckner has also incurred substantial past and future medical expenses and wage loss.

74.     Officers Wagner and Zibell's conduct warrants an award of punitive damages in an amount to be determined by the jury as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983).

### Prayer for Relief

WHEREFORE, Plaintiff Matthew Burckner prays for judgment against Defendants Todd Wagner and Blake Zibell as follows:

1.     A money judgment for compensatory, special, and punitive damages in an amount to be determined by a jury but in excess of $75,000, together with costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and prejudgment interest; and

2.     For such further relief as this Court deems just and equitable.

**STORMS DWORAK LLC**

Dated: Wednesday, May 6, 2026          /s/ Ryan O. Vettleson
Jeffrey S. Storms, MN #0387240
Ryan O. Vettleson, MN #0401544
800 Hennepin Ave.
800 Pence Building
Minneapolis, MN 55403
Telephone:  612.455.7050
jeff@stormsdworak.com
joe@stormsdworak.com

***Attorneys for Plaintiff***

12